**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, et al.,

                                        Plaintiffs,                     Civ. No. 12-6822 (KM)

v.                                                                      **O P I N I O N**

RBS FINANCIAL PRODUCTS, INC., et al.,

                                        Defendants.

*Appearances by:*

NUKK-FREEMAN & CERRA, P.C.
By:     Robin H. Rome, Esq.
        Kirsten McCaw Grossman, Esq.
636 Morris Turnpike, Suite 2F
Short Hills, New Jersey 07078

QUINN EMANUEL URQUHART & SULLIVAN, LLP
By:     Daniel L. Brockett, Esq.
        David D. Burnett, Esq.
51 Madison Avenue, 22nd Floor
New York, New York 10010

By:     Jeremy D. Anderson, Esq.
        David C. Armillei, Esq.
        Chris Barker, Esq.
865 South Figueroa Street
Los Angeles, California 90017

        *Attorneys for Plaintiffs,*

GREENBAUM, ROWE, SMITH, & DAVIS LLP
By:    Paul Rowe, Esq.
       Alan S. Naar, Esq.
P.O. Box 5600
Woodbridge, New Jersey 07095

SIMPSON THATCHER & BARTLETT LLP
By:    Thomas C. Rice, Esq.
       Alan Turner, Esq.
425 Lexington Avenue
New York, New York 10017

*Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

This matter arises out of alleged fraud in the sale of residential mortgage-backed

securities ("RMBS").  On August 21, 2012, Plaintiffs The Prudential Insurance Company of

America ("Prudential"), Park Place Commerce Investments, LLC, Pru Alpha Fixed Income

Opportunity Master Fund I, L.P. ("Pru Alpha"), Prudential Trust Company ("Pru Trust"), and the

Gibraltar Life Insurance Company, Ltd. filed a Complaint, in the Superior Court of New Jersey,

against Defendants RBS Financial Products, Inc. (f/k/a Greenwhich Capital Financial Products,

Inc.), RBS Acceptance Inc. (f/k/a Greenwich Capital Acceptance, Inc.), Financial Asset

Securities Corp., and RBS Securities, Inc. (f/k/a Greenwich Capital Markets, Inc.) (collectively

"RBS").  The Complaint was never served on Defendants.

On or about September 14, 2012, Plaintiffs filed an Amended Complaint that, among

other things, added three new plaintiffs: Commerce Street Investments, LLC ("Commerce

Street"), Pruco Life Insurance Company ("Pruco"), and Prudential Retirement Insurance and

Annuity Company ("PRIAC").  The Amended Complaint also omitted two previous plaintiffs:

Park Place Commerce Investments, LLC and the Gibraltar Life Insurance Company, Ltd.  In the

Amended Complaint, Plaintiffs allege the following four causes of action against Defendants: (i)

common law fraud/fraudulent inducement; (ii) aiding and abetting common law fraud/fraudulent inducement; (iii) negligent misrepresentation; and (iv) violation of the New Jersey Civil RICO statute, N.J.S.A. 2C:41-1 et seq.

On November 2, 2012, Defendants removed this action to this Court, pursuant to 28 U.S.C. §§ 1334(a), 1452(a), 1441(b), and 1332. Plaintiffs now move to remand this action to New Jersey Superior Court. For the reasons set forth below, Plaintiff's motion is GRANTED.

## I. BACKGROUND

From 2004 to 2007, Plaintiffs purchased more than $477 million in RMBS, across twenty-three separate securitizations ("the Certificates"), from Defendants. In the Amended Complaint, Plaintiffs allege that the written materials prepared by Defendants to solicit Plaintiffs' RMBS purchases contained numerous material representations and omissions regarding the underwriting guidelines that were followed by the underlying mortgage loan originators, and the risk profile and credit quality of those loans. Plaintiffs further allege that Defendants' failure to follow their underwriting guidelines resulted in a markedly increased default rate on the mortgage loans and a marked decrease in the value of the Certificates.

The Amended Complaint identifies nine originators of the loans backing the Certificates. Three of those originators—Fremont, First NLC, and Meritage—are currently involved in bankruptcy proceedings (the "Bankrupt Originators"). The Bankrupt Originators originated or acquired 100% of the loans in twelve of the twenty-three securitizations. In connection with these securitizations, the Bankrupt Originators agreed to indemnify Defendants for any losses relating to misstatements of material fact regarding the quality or nature of the loans, including expenses associated with investigating or defending against losses or claims arising from such misstatements.

## II. DISCUSSION

Plaintiffs now move to remand this action to New Jersey Superior Court, pursuant to 28 U.S.C. § 1447. In doing so, they argue that (1) their state court action is not "related to" any bankruptcy proceeding; (2) the Court is required under 28 U.S.C. § 1334(c)(2) to abstain from exercising any "related to" jurisdiction; (3) the Court should remand this case under the permissive abstention provisions of 28 U.S.C. §§ 1334(c)(1) and 1452(b); and (4) all named Plaintiffs are proper parties, and there is no basis for diversity jurisdiction.

Defendants oppose the motion, arguing that (1) this lawsuit will have a conceivable effect on multiple bankruptcy proceedings; (2) mandatory abstention is not appropriate in this action; (3) there is no basis for equitable remand; and (4) there is complete diversity among properly joined parties.

### A.    Standard of Review

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "Absent diversity of citizenship, federal-question jurisdiction is required." Id. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

Defendants timely removed this action to this Court. In doing so, Defendants asserted that (1) Plaintiffs' claims are jurisdictionally "related to" the Bankrupt Originators' bankruptcy proceedings because those entities agreed to indemnify Defendants for all losses and legal costs

arising out of relevant lawsuits; and (2) there is complete diversity of citizenship among all properly named parties.

**B.      Related To Jurisdiction**

Under 28 U.S.C. § 1334(b), federal district courts have original jurisdiction over actions that are "related to" one or more specific bankruptcy proceedings.  "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*"  Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).  "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id.

To be sure, "jurisdiction . . . to hear cases related to bankruptcy is not without limit."  Id. "For subject matter jurisdiction to exist, therefore, there must be some nexus between the 'related' civil proceeding and the title 11 case."  Id. (citation omitted).  Nonetheless, "[a] key word in [this test] is conceivable.  Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate."  Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999) (quotation omitted).

Defendants contend that the indemnity agreements with the Bankrupt Originators provides related-to jurisdiction.  According to Defendants, these agreements are "automatic" and "mandatory."  Plaintiffs, on the other hand, argue that the indemnity agreements are purely

contingent and therefore create only the most remote relationship between this action and the Bankrupt Originators' estates, which, as matter of law, is insufficient to create related-to jurisdiction.

As Plaintiffs point out, "[a]n indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction." Steel Workers Pension Trust, Inc. v. Citigroup, Inc., 295 B.R. 747, 750 (E.D.Pa. 2003). "Only when the right to indemnification is clearly established and accrues upon the filing of the civil action is the proceeding related to the bankruptcy case." Id. On the other hand, "there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings." In re W.R. Grace & Co., 591 F.3d 164, 172 (3d Cir. 2009); see also In re Federal-Mogul Global, Inc., 300 F.3d 362, 382 (3d Cir. 2002) ("[W]hether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.").

Defendants cite to the following portion of one of the indemnity agreements at issue as an example of its "automatic" and "mandatory" nature:

> Fremont shall indemnify and hold harmless each of the Depositor [Defendant Financial Asset Securities Corp.] and each Underwriter [including Defendant Greenwich Capital Markets, Inc.], each of their respective directors, each of their respective officers . . . against any and all losses, claims, damages or liabilities to which the Depositor or any Underwriter . . . may become subject . . . to the extent that such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in the Investor Materials, the Free Writing Prospectus or the Prospectus Supplement or any amendment or supplement thereto, . . . to the extent that such untrue statement or alleged untrue statement or omission or alleged omission . . . relates to information contained in the Fremont Information or the Fremont Collateral Information; and Fremont shall reimburse the Depositor and each Underwriter and each such director, officer or controlling Person for any legal or other expenses reasonably incurred

by the Depositor and such Underwriter, and each such director, officer or controlling Person in connection with investigating or defending any such loss, claim, damage, liability or action.

(Def.'s Opp'n, 7.)

While the language requiring the Bankrupt Originators to indemnify Defendants for losses, including legal fees, arising out of misstatements of material fact "contained in the Investor Materials, the Free Writing Prospectus or the Prospectus Supplement" is certainly mandatory, this lawsuit concerns material misstatements of fact contained in written materials that were *prepared by Defendants*.[1]  Furthermore, even if those misstatements were, in fact, contained in the Investor Materials, the Free Writing Prospectus or the Prospectus Supplement, they must also "relate[] to information contained in the [Bankrupt Originator's] Information or the [Bankrupt Originator's] Collateral Information."  Consequently, Plaintiffs' lawsuit does not automatically trigger Defendants' indemnity agreements with the Bankrupt Originators, and therefore has no potentially automatic effect on the Bankrupt Originators' bankruptcy estates. Indeed, in order to conceivably affect those bankruptcy estates, Defendants would have to file separate actions alleging that the misstatements for which they were sued by Plaintiffs (1) were contained in the Investor Materials, the Free Writing Prospectus or the Prospectus Supplement; and (2) relate to information contained in the Bankrupt Originator's Information or the Bankrupt Originator's Collateral Information.

Defendants note two cases, <u>N.J. Dep't of Treasury, Div. of Inv. v. Fuld</u>, Civ. No. 09-162, 2009 WL 1810356 (D.N.J. June 25, 2009) and <u>Abrams v. Gen. Nutrition Cos.</u>, No. CV 06-1820,

---

[1] There is no indication that the written materials prepared by Defendants to solicit Plaintiffs' RMBS purchases in this case are the same as the Investor Materials, the Free Writing Prospectus or the Prospectus Supplement referenced in Defendants' indemnity agreements.

2006 WL 2739642 (D.N.J. Sept. 25, 2006), where this Court found that an indemnity agreement between a defendant and a bankrupt entity had a conceivably automatic effect on a particular bankruptcy estate and therefore provided a sufficient basis upon which to exercise related-to jurisdiction. However, in both cases, the language of the indemnity agreements differed substantially from the agreements in this case. In Fuld, the indemnity agreement required the subject bankrupt entity to "indemnify any director or officer of the corporation who was, or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigation." 2009 WL 1810356, at *4. Because the defendant was unquestionably an officer of the corporation, the indemnity agreement was automatically triggered and therefore had a potentially automatic effect on the entity's bankruptcy estate. See id.

Similarly, in Abrams, this court found that an indemnity agreement between a defendant and a bankrupt entity had an automatic conceivable effect on the entity's bankruptcy estate because the agreement required the bankrupt entity to indemnify the defendant for "all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the [the entity's] products." 2006 WL 2739642, at *6. And because the lawsuit unquestionably arose out of the sale of the bankrupt entity's products, the indemnity agreement "automatically creates liability for the . . . bankruptcy estate if [the plaintiff] prevails in his claims." Id.

Here, however, as previously discussed, based on the language of the indemnity agreements cited by Defendants, Plaintiffs' lawsuit has no automatic effect on the Bankrupt Originators' bankruptcy estates. Indeed, this Court has reached the same conclusion when analyzing indemnity agreements containing nearly identical language. See, e.g., Prudential Ins. Co. of Am. v. Barclays Bank PLC, Civil Action No. 12–5854, 2013 WL 221995, at *2-*6

(D.N.J. Jan. 22, 2013); <u>Prudential Ins. Co. of Am. v. J.P. Morgan Sec. LLC</u>, Civ. No. 2:12-cv-03489, 2012 WL 6771977, at *2-*6 (D.N.J. Dec. 20, 2012). Consequently, this Court does not have related-to jurisdiction over this action.[2]

## C.     Mandatory Abstention

Plaintiffs contend that, even if the Court were to find that it has related-to jurisdiction over their action, it is required to abstain from exercising that jurisdiction and remand the action to New Jersey Superior Court, pursuant to 28 U.S.C. § 1334(c)(2). 28 U.S.C. § 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

"Thus, upon a timely motion under § 1334(c)(2), a district court *must* abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." <u>Stoe v. Flaherty</u>, 436 F.3d 209, 213 (3d Cir. 2006) (emphasis in original).

---

[2] Plaintiffs set forth a number of additional arguments in support of its position that this lawsuit has no conceivable effect on the Bankruptcy Originators' bankruptcy estates. The Court need not address these arguments because it need look no further than the language of the indemnity agreements to agree with Plaintiffs' position.

Defendants argue that Plaintiffs fail to satisfy the first, third, and fifth requirements. With respect to the first requirement, Defendants, most unpersuasively, contend that Plaintiffs' lawsuit is, in part, based on federal law because they allege a violation of the NJRICO statute, which is informed by federal law. Defendants surely understand that many state statutes are informed by federal interpretations of comparable federal statutes, and that this in no way creates independent federal jurisdiction over those state statutes.

Defendants further contend that Plaintiffs fail to satisfy the third requirement because the Court has diversity jurisdiction over this case. As discussed below, however, the Court lacks diversity jurisdiction.

Finally, Defendants contend that Plaintiffs fail to satisfy the fifth requirement because (1) there are multiple RMBS cases filed by Plaintiffs in federal court that raise almost identical allegations, claims, and issues; and (2) the limited resources of Essex County courts will impede the timely adjudication of this case in New Jersey Superior Court. Plaintiffs, however, persuasively point out that having similar cases in multiple jurisdictions cuts against the requirement of timely adjudication only "if abstention and remand of the state law claims will unduly prolong the administration of the estate." Parmalat Capital Finance Ltd. V. Bank of Am. Corp., 639 F.3d 572, 581 (2d Cir. 2001); see also Stoe, 436 F.3d at 219 ("[T]imeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." (citation omitted)).

It is undisputed that (1) this Court is not charged with administration of any Bankrupt Originator's bankruptcy estate, all of which are before other jurisdictions; (2) the claims bar date has passed in all of the Bankrupt Originators' bankruptcy proceedings; and (3) a Chapter 11 plan

has been confirmed and/or Chapter 7 liquidations have commenced in all of those proceedings. Consequently, there is not a shred of evidence that abstention and remand will unduly prolong the administration of any Bankrupt Originator's bankruptcy estate.

Plaintiffs also persuasively point out that, for the purposes of remand, in considering a state court's ability to timely adjudicate a particular case, a district court must compare "the backlog of the state court's calendar relative to the federal court's calendar," Parmalat Capital, 639 F.3d at 580, and that there is no "overwhelming or substantial difference between" the expediency of this Court and New Jersey State courts, Calascibetta v. J.H. Cohn LLP, Civil Action No. 11-1743, 2011 WL 2224178, at *2 (D.N.J. June 6, 2011).[3] Consequently, even if there were related-to jurisdiction in this case, the Court would be required to abstain from adjudicating it and remand it to New Jersey Superior Court.

**D.    Permissive Abstention**

Plaintiffs further argue that, even if the Court were to find mandatory abstention inappropriate in this case, the interests of justice and comity compel permissive abstention.  28 U.S.C. § 1334(c)(1) provides that "a district court in the interest of justice, or in the interest of comity with State courts or respect for State law . . . may abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1); see also 28 U.S.C. § 1452(b) (a district court "may remand [a] claim or cause of action on any equitable ground.").

Counts consider a number of factors in determining whether to permissively abstain from exercising related-to jurisdiction over a given case, including "1) the effect on the efficient

---

[3] While Defendants note that Essex County courts have both a relatively high number of vacancies and a heavy caseload, it fails to compare that with the caseload and number of vacancies in this Court.

administration of the estate if it abstains, 2) the extent to which state law issues predominate over bankruptcy issues, 3) the difficulty or unsettled nature of the relevant state law, 4) whether there is an established state court proceeding on the same issues, 5) any grounds for federal jurisdiction besides the bankruptcy, 6) the degree of relatedness of the proceeding to the main bankruptcy case and the substance rather than the form of an allegedly core proceeding, and 7) the likelihood that the bankruptcy proceeding represents forum-shopping by the petitioner." Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs., 181 B.R. 781, 793 (D.N.J. 1995) (citation omitted).

Here, all of these factors are satisfied. First, as previously discussed, (1) this Court is not charged with administration of any Bankrupt Originator's bankruptcy estate, all of which are before other jurisdictions; (2) the claims bar date has passed in all of the Bankrupt Originators' bankruptcy proceedings; and (3) a Chapter 11 plan has been confirmed and/or Chapter 7 liquidations have commenced in all of those proceedings. See Prudential, 2012 WL 6771977, at *7 (first factor of permissive abstention satisfied because "none of the pending bankruptcies are before this Court and the bankruptcy proceedings of the Bankrupt Originators are being handled by a variety of federal bankruptcy courts throughout the country. Thus, regardless of whether this Court or the state court establishes liability, subsequent costs, or 'conceivabl[e] affect[s],' efficacy would be the same.").

Second, as previously discussed, Plaintiffs' action asserts only state law claims. As previously discussed, while Plaintiffs' claim under the NJRICO statute could conceivably be informed by federal interpretations of the federal RICO statute, it does not alter the fact that a claim under the NJRICO statute is exclusively one under state law. Moreover, as Plaintiffs point out, the second factor of permissive abstention is whether state law issues predominate over

*bankruptcy issues*.  Defendants make no argument that state law issues will not predominate over bankruptcy issues in this case.

Third and fourth, while Plaintiffs' state law claims for fraud and negligent misrepresentation are fairly routine, Plaintiffs points out that the NJRICO statute is fairly complex and can differ from the comparable federal RICO statute.  <u>See</u> <u>State v. Ball</u>, 141 N.J. 142, 160-62 (noting major differences in the required "organization" and "distinctiveness" of the enterprise element); <u>Metz v. United Counties Bancorp.</u>, 61 F. Supp. 2d 364, 371 (D.N.J. 1999) (securities fraud remains a basis for an NJRICO claim).  To be sure, federal courts have, at times, adjudicated New Jersey RICO cases.  However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966).

Fifth, Plaintiffs have not asserted any federal claims, and as discussed below, there is no diversity jurisdiction.  Thus, even if the Court had found related-to jurisdiction, there would be no independent grounds for federal jurisdiction.

Sixth, Plaintiffs' lawsuit has the most minimal relation to the Bankrupt Originators' bankruptcy proceedings.  As previously discussed, (1) Plaintiffs' lawsuit does not involve any of the Bankrupt Originators; (2) the bankruptcy proceedings are taking place in other jurisdictions; (3) the claims bar date has passed in all of the bankruptcy proceedings; (4) a Chapter 11 plan has been confirmed and/or Chapter 7 liquidations have commenced in all of those proceedings; and (5) Defendants' indemnity agreements with the Bankrupt Originators are contingent in nature.

Finally, Defendants' removal petition smacks of forum shopping.  As previously discussed, Plaintiffs assert only state law claims that have a very remote connection to the

Bankrupt Originators' bankruptcy proceedings. Additionally, as discussed below, there is no diversity jurisdiction. Thus, all of the factors of permissive abstention weigh in favor of remand.

## E.     Diversity Jurisdiction

This Court has original jurisdiction over actions between citizens of different states and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants. Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990).

Defendants argue that there would be complete diversity in this case, but for Plaintiffs' fraudulent joinder of PRIAC as a plaintiff. "The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." In re Briscoe, 448 F.3d 201, 215-16 (3d Cir. 2006) (citation omitted). "In a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." Id. at 216.

"[J]oinder is fraudulent if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Id. (quotation omitted). "If the district court determines that the joinder was 'fraudulent' in this sense, the court can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. (quotation omitted). "If, however, the district court determines that it does not have subject-matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court." Id. (citation omitted).

Defendants maintain that PRIAC is not a proper plaintiff in this case because it did not actually purchase any of the Certificates at issue in this case. According to Defendants, Prudential Asset Management ("PIM"), a New Jersey resident and a diverse entity in this case, was the true purchaser of the Certificates alleged to have been purchased by PRIAC. Defendants therefore contend that PRIAC lacks standing to assert any of the claims set forth in Plaintiffs' Amended Complaint.

In doing so, Defendants point to authority stating that a plaintiff must have personally relied on a material misstatement or omission to satisfy the reliance element of a claim for fraud or negligent misrepresentation under New Jersey Law, see Kaufman v. i-State Corp., 165 N.J. 94, 109 (2000), and that, under certain circumstances, a plaintiff must have been a direct purchaser of an item that is the subject of a RICO claim in order to have standing to sue under RICO, see Hale v. Stryker Orthopaedics, Civ. No. 08-3367, 2009 WL 321579, at *3-*4 (D.N.J. Feb. 9, 2009). To the extent this authority applies to Plaintiffs' claims in this case, it speaks to a merits analysis of those claims, which would be completely inappropriate in determining fraudulent joinder. See In re Briscoe, 448 F.3d at 219 ("[A] district court must not step from the threshold jurisdictional issue into a decision on the merits.") (quotation omitted).

Furthermore, Plaintiffs provide more than a colorable ground for joining PRIAC in this case. They provide evidence suggesting that although PIM made the purchases of the Certificates in this case, it did so only as an investment advisor to, and as an agent of, PRIAC. Plaintiffs also point to authority stating that a principal, who was defrauded through an agent, has independent standing to pursue fraud claims. See Restatement (Second) of Agency § 315 ("A person who fraudulently . . . enters into a transaction with[] an agent . . . is subject to liability to the principal whether the fraud is practiced upon the agent or upon the principal."); In re Beacon

Assocs. Litig., 282 F.R.D. 315, 324 (S.D.N.Y. 2012) (plaintiff purchasers of securities may sue for securities fraud when "their agents . . . were so defrauded."); In re Fine Host Corp. Sec. Litig., 25 F. Supp. 2d 61, 71 (D.Conn. 1998) ("Under well-settled principles of agency law, one who defrauds an agent is liable to the principal." (citing Restatement (Second) of Agency § 315)).  Thus, Defendants fail to show that PRIAC was fraudulently joined, and, as a result, the Court may not exercise diversity jurisdiction over this case.[4]

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is GRANTED.

The Court will enter an order implementing this opinion.

    **/s/ Dickinson R. Debevoise_____**
    DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 29, 2013

---

[4] Moreover, this Court squarely rejected Defendants' arguments of fraudulent joinder in a case that presented nearly identical facts.  See Prudential, 2013 WL 221995, at *9-*11.